IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE THE APPLICATION OF AMGEN INC. | )<br>)<br>)<br>)<br>) Misc. Case. No. _____<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF AMGEN INC.'S *EX PARTE*
APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER
COMPELLING DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Applicant Amgen Inc.*

May 9, 2023

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................1

II. STATEMENT OF FACTS AND NATURE OF THE FOREIGN PROCEEDING............6

    A.  CONTEMPLATED AUSTRIAN PROCEEDINGS...............................................8

    B.  CONTEMPLATED SLOVENIAN PROCEEDINGS..............................................9

III. SCOPE OF DISCOVERY REQUESTED....................................................................9

IV. LEGAL STANDARD.............................................................................................10

V.  ARGUMENT .........................................................................................................11

    A.  AMGEN SATISFIES SECTION 1782'S STATUTORY
        REQUIREMENTS, AUTHORIZING THE COURT TO GRANT
        THE REQUESTED DISCOVERY...................................................................12

        1.  Sandoz Resides Within the District of Delaware........................................12

        2.  The Requested Discovery Is For Use in Preliminary
            Injunction or Patent Infringement Proceedings in Austria
            and Slovenia...........................................................................................12

        3.  Amgen Is an Interested Person Within the Meaning of the
            Statute. ..................................................................................................13

    B.  THE COURT SHOULD EXERCISE ITS DISCRETION AND
        COMPEL DISCOVERY BECAUSE THE *INTEL* FACTORS
        SUPPORT GRANTING THE APPLICATION ...................................................14

        1.  Sandoz Inc. Is Not a Party to the Contemplated Preliminary
            Injunction Proceedings............................................................................14

        2.  The Austrian and Slovenian Courts Will be Receptive to the
            Evidence Sought .....................................................................................15

        3.  Amgen's Application Does Not Circumvent Foreign
            Restrictions on Evidence.........................................................................16

        4.  The Subpoena Is Not Unduly Intrusive or Burdensome............................17

VI. CONCLUSION.......................................................................................................20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen Inc. et al. v. Sandoz Inc. et al.*,
    Case 2:23-cv-02406, D.I. 1 (D.N.J. May, 1, 2023)....................................................................3

*In re Alghanim*,
    17-mc-406 (PKC), 2018 WL 235666 (S.D.N.Y. May 9, 2018) ...............................................13

*In re Application of Gilead Pharmasset LLC*,
    C.A. No. 14-mc-243 (GMS), 2015 WL 1903957 (D. Del. Apr.14, 2015) .......................12, 15

*In re B&C KB Holding GmbH*,
    No. 22-mc-00180 (LAK) (VF), 2023 WL 1777326 (S.D.N.Y. Feb. 6, 2023).......................15

*In re Chevron Corp.*,
    633 F.3d 153 (3d Cir. 2011).....................................................................................................15

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019).....................................................................................................19

*In re Ex Parte Application of Iraq Telecom*,
    No. 19-175-RBS, 2023 WL 2402873 (E.D. Pa. Mar. 8, 2023).................................................13

*In re Global Energy Horizons Corp.*,
    647 F. App'x 83 (3d Cir. 2016) ...............................................................................................18

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    C.A. No. 05-717-JJF, 2008 WL 4861544 (D. Del. Nov. 7, 2008)............................................12

*In re Letter of Request from Dist. Ct. of Feldbach, Austria*,
    No. MC-22-00005-TUC-RM, 2022 WL 657398 (D. Ariz. Mar. 4, 2022) .............................15

*In re Liverpool Ltd. P'ship*,
    MISC. No. 21-86-CFC, 2021 WL 3793901 (D. Del. Aug. 26, 2021) ...............................14, 19

*In re Matter of Wei*,
    C.A. No. 18-mc-117-RGA, 2018 WL 5268125 (D. Del. Oct. 23, 2018) ...............................12

*In re Mota*,
    Misc. No. 19-369 (MN), 2020 WL 95493 (D. Del. Jan. 8, 2020)  ..........................................10

*In re O'Keeffe*,
    C.A. No. 47-5835 (WJM), 2015 WL 540238 (D.N.J. Feb. 10, 2015), *aff'd*,
    646 F. App'x 263 (3d Cir. 2016) ..............................................................................................16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)............................................................................... *passim*

*John Deere Ltd. v. Sperry Corp.*,
    754 F.2d 132 (3d Cir. 1985)............................................................................16

*Kulzer v. Esschem, Inc.*,
    390 F. App'x 88 (3d Cir. 2010) ......................................................14, 16, 17

*Sergeeva v. Tripleton Int'l Ltd.*,
    834 F.3d 1194 (11th Cir. 2016) ....................................................................19

*Via Vadis Controlling GmbH v. Skype, Inc*.,
    C.A. No. 12-mc-193-RGA, 2013 WL 646236 (D. Del. Feb. 21, 2023) ................................12

**Rules and Statutes**

28 U.S.C. § 1782 ................................................................................... *passim*

35 U.S.C. § 271(e)(2)(C) ..............................................................................7

42 U.S.C. § 262 ...............................................................................................2, 3

D. Del. LR 26.2 ............................................................................................18

## I.    **INTRODUCTION**

Amgen Inc. ("Amgen") respectfully submits this memorandum of law in support of its Application for an *ex parte* order pursuant to 28 U.S.C. § 1782 ("Section 1782") for limited discovery from Sandoz Inc. ("Sandoz"), a Delaware corporation, to use in anticipated preliminary injunction proceedings in Austria and Slovenia against Sandoz GmbH and Lek Pharmaceuticals d.d. ("Lek"), respectively.

Amgen is a pioneering biotechnology company that is committed to leveraging advances in molecular biology, immunology, and recombinant DNA technology to benefit patients suffering from serious illnesses.    Through its considerable investments in research and development, Amgen has brought numerous therapeutics to market, including the two drugs at issue here, Prolia® and XGEVA®.    These drugs treat a variety of bone conditions, such as osteoporosis and the prevention of skeletal related complications from cancer that has spread to the bone.    The active ingredient in both Prolia® and XGEVA® is denosumab.    This active ingredient, as well as the processes used to manufacture such biologic medicines, are protected by a worldwide portfolio of patents owned by Amgen.

In contrast, Sandoz markets itself as a "global leader in off-patent (generic and biosimilar) medicines."    *See* Ex. 1 at 1 (Sandoz 9/19/22 Press Release).[1]    Despite that statement, Sandoz is taking aim at Amgen's patented drugs. Notwithstanding Amgen's patent protections, Sandoz has developed a denosumab biosimilar (sometimes referred to as GP2411) and is seeking regulatory approval for its manufacture, use, and sale.

Sandoz has worldwide aspirations for its biosimilar and is targeting, at least, the U.S. and European markets.    *See* Ex. 2 at 19 (Novartis Q3 2019 Interim financial report).    Indeed,

---

[1]    Unless otherwise noted, "Ex." citations herein are to exhibits attached to the Declaration of Brian P. Egan, filed herewith.

Sandoz has publicly announced that in crafting the global clinical study to test its denosumab biosimilar, Sandoz consulted with multiple "major regulatory agencies" and that the studies were expected to support multiple regulatory submissions. *See* Ex. 1 at 2 (Sandoz 9/19/22 Press Release). Sandoz has begun executing on its plan to bring its biosimilar to market years before Amgen's relevant patents expire. On February 6, 2023, Sandoz announced that the Food and Drug Administration ("FDA") accepted Sandoz's biologics license application ("BLA"), which seeks authorization to engage in the commercial manufacture, use, or sale of its denosumab biosimilar. Ex. 3 at 1-2 (Sandoz 2/6/23 Press Release).

In connection with Sandoz's FDA submission, Amgen and Sandoz engaged in the information exchange pursuant to the Biologics Price Competition and Innovation Act ("BPCIA") procedures, which provides, among other things, a framework for a biosimilar applicant and the branded drug company to exchange confidential technical information in order to identify patents that may be infringed by the marketing and sale of the proposed biosimilar. 42 U.S.C. § 262(*l*). Under this framework, Sandoz provided Amgen a copy of its BLA, which contains certain information about the processes Sandoz uses to manufacture its denosumab biosimilar.[2] Based on a review of the limited information Sandoz disclosed,[3] Amgen provided Sandoz with a list of U.S. patents for which Amgen believes a claim of infringement could reasonably be asserted if Sandoz's

---

[2] To be clear, no Sandoz confidential information was accessed or used in the preparation of the instant Application. Sandoz provided its BLA under the confidentiality provisions of the BPCIA, which only permit access by Amgen's outside counsel (certain attorneys at the firm Sidley Austin LLP and at the firm Walsh Pizzi O'Reilly Falanga LLP) and one designated Amgen in-house counsel, and they are precluded from sharing Sandoz confidential information with anyone else at Amgen or other outside counsel. The BPCIA's confidentiality provisions also prohibit Amgen from using that information in the contemplated European litigations discussed herein, thus requiring Amgen to seek discovery under Section 1782.

[3] Although Amgen made multiple requests for Sandoz to provide additional information describing the processes used to manufacture Sandoz's denosumab biosimilar pursuant to 42 U.S.C. § 262(*l*)(2)(A), Sandoz refused to produce such information.

proposed biosimilar product is offered for sale, sold, or imported into the United States. Amgen subsequently provided this list of patents to the FDA pursuant to 42 U.S.C. § 262(k)(9)(A)(iii), and it has since been published by the FDA and made available to the public via the Purple Book's Patent List website.[4]  On May 1, 2023, Amgen filed a patent infringement lawsuit in the District of New Jersey against Sandoz, Sandoz GmbH and Lek among others, alleging infringement of certain Amgen patents that are listed in the Purple Book. *Amgen Inc. et al. v. Sandoz Inc. et al.*, Case 2:23-cv-02406, D.I. 1 (D.N.J. May, 1, 2023).

Preparations for commercial manufacturing of Sandoz's denosumab biosimilar have already begun. In a March 24, 2023 letter, Sandoz GmbH provided Amgen notice of its intention to manufacture in Austria for the purpose of exporting to countries outside the European Union, and that this manufacturing could begin as early as three months from the notice date.[5] Amgen believes that any such manufacture will likely infringe certain European patents owned by Amgen, including the European counterparts to several patents identified on the FDA's Purple Book's Patent List. Included on the list of patents submitted to the FDA are Amgen's U.S. Patent Nos. 9,320,816; 9,359,435; 11,130,980 and 11,299,760, which cover methods of manufacturing biologic drugs like denosumab. These patents have corresponding European patents, including (but not limited to) process patents EP 1984517 ("EP '517"); EP 2173861 ("EP '861"); and EP

---

[4]    https://purplebooksearch.fda.gov/patent-list. *See also* Ex. 14.

[5]    Sandoz GmbH provided notice under European Regulation 2019/933, the so-called SPC manufacturing waiver. Importantly for this application, that regulation does not prevent Amgen from asserting its European process patents against infringing acts that occur in connection with manufacturing Sandoz's denosumab biosimilar. Declaration of Dominik Göbel ("Göbel Declaration") at ¶ 9. The Göbel Declaration, which is filed concurrently herewith, addresses Sandoz GmbH's operations in Austria, Austrian law, and the use of Section 1782 discovery in Austrian proceedings.

2601287 ("EP '287) (collectively the "European Patents"). Göbel Declaration at ¶ 11; Declaration of Helena Butolen ("Butolen Declaration") at ¶ 14.[6]

In addition to manufacturing in Austria, Amgen anticipates that Sandoz's denosumab biosimilar may also be manufactured in Slovenia. Sandoz highlights on its U.S. website that "Sandoz biosimilar production takes place at clinical- and commercial-scale state-of-the-art facilities" in "Kundl and Schaftenau in Austria and Menges in Slovenia." *See* Ex. 5 at 2 ("Sandoz Manufacturing" Website); *see also* Butolen Declaration at ¶ 8.[7] Lek has also acknowledged that its Slovenian manufacturing facility has produced "active ingredients" for biosimilar medicines and that it has already completed "the transfer and validation campaign of denosumab." Butolen Declaration at ¶ 11 (citing Lek 2020 Sustainability Report at 29). Moreover, Sandoz continues to expand its biosimilar manufacturing capabilities with its recent $400 million investment to build a new manufacturing plant in Slovenia. Ex. 4 at 1 (Sandoz 3/9/23 press release announcing expansion of biologics operations in Slovenia). And, finally, in the draft product packaging provided with Sandoz GmbH's March 2023 notice letter, the denosumab biosimilar is identified as a "Product of Slovenia":

---

[6]    The Butolen Declaration, which is filed concurrently herewith, addresses Lek's operations in Slovenia, Slovenian law, and the use of Section 1782 discovery in Slovenian proceedings

[7]    Sandoz GmbH operates the Austrian manufacturing facilities, and Lek operates the Slovenian manufacturing facility. Exs. 6 and 7 (excerpts from Sandoz's "Locations" website); *see also* Göbel Declaration at ¶ 7; Butolen Declaration at ¶ 8. Sandoz, Sandoz GmbH, and Lek are part of the Sandoz Group, which is the generic and biosimilar drugs division of Novartis AG. Novartis AG is based in Switzerland and, based on public statements, it intends to spin off the Sandoz Group into its own company in 2023. Ex. 8 at 1 (Novartis 8/25/22 Press Release).

Göbel Declaration at Ex. 3.

Through this Section 1782 Application, Amgen seeks narrow discovery[8] from Sandoz to confirm the location of all commercial manufacturing, obtain details of the denosumab biosimilar manufacturing process, and identify the characteristics of the denosumab biosimilar produced in those facilities. Publicly available information from other Sandoz BLAs confirms that the manufacturing locations of Sandoz's biosimilar products and the processes used in those locations to manufacture the biosimilar products is the type of information in Sandoz's possession, custody, and/or control. Ex. 9 at 1 (Ziextenzo Approval Letter); Ex. 10 at 73 (Ziextenzo Other Reviews); Ex. 11 at 216, 239 (Zarxio Correspondence File); Ex. 12 at 1 (Erelzi Approval Letter); Ex. 13 at 2 (Hyrimoz Approval Letter) (collectively "Exemplary FDA Documents"). In fact, notwithstanding its reference to being a "Product of Slovenia" on the product label above, the label states that it is "Manufactured by: Sandoz Inc." Göbel Declaration at Ex. 3.

In connection with the production of Sandoz's denosumab biosimilar in Austria, Amgen is prepared to institute proceedings against Sandoz GmbH, including preliminary injunction proceedings, to enforce the European Patents, each of which are validated in Austria.[9]

---

[8] Copies of the subpoenas are attached as Exhibits A and B to the Declaration of Brian P. Egan.

[9] EP '517 corresponds to Austrian Reg. No. E 573 136 and is the European counterpart to U.S. Pat. No. 9,359,435; EP '861 corresponds to Austrian Reg. No. E 506 432 and is the European counterpart to U.S. Pat. No. 9,320,816; and EP '287 corresponds to Austrian Reg. No 705 746 and
(Continued . . .)

Göbel Declaration at ¶ 11.  Similarly, in Slovenia, Amgen is prepared to institute proceedings against Lek, including preliminary injunction proceedings, to enforce EP '517, which is validated in Slovenia.[10] These proceedings will seek to enjoin Sandoz GmbH and Lek from using the processes claimed in the European Patents to manufacture a denosumab biosimilar.

Due to the laws governing preliminary injunction and infringement proceedings in Austria and Slovenia, Amgen must present concrete evidence of infringement or threatened infringement to the court at the time it files its anticipated actions.  But neither Austria nor Slovenia has mechanisms for pre-suit discovery akin to Section 1782, which is why Amgen seeks to secure pertinent information for purposes of Amgen's anticipated proceedings by way of the instant Application.   Upon receipt and analysis of this information, Amgen will be positioned to promptly begin infringement proceedings, including by seeking preliminary injunctions in Austria and Slovenia, to protect its European intellectual property rights.

## II.    STATEMENT OF FACTS AND NATURE OF THE FOREIGN PROCEEDING

Amgen received European Medicines Agency ("EMA") approval for its Prolia® and XGEVA® products in 2010 and 2011, respectively, and received FDA approval for both products in 2010.  These products have become blockbuster medications for the treatment of bone resorption and postmenopausal osteoporosis (Prolia®) and the treatment of bone fractures and neoplasm metastasis (XGEVA®).  Amgen maintains an extensive global portfolio of patents related to its denosumab products and processes for manufacturing such biologic drugs, including a number of European patents.

---

is the European counterpart to U.S. Pat. Nos. 11,130,980 and 11,299,760.  Göbel Declaration at ¶ 11.

[10]    EP '517 corresponds to Slovenian Patent No. 2000731038.

On February 6, 2023, Sandoz announced that the FDA accepted its BLA for a denosumab biosimilar. Ex. 3 at 1 (Sandoz 2/6/23 Press Release). As reported by Sandoz, "[t]he application includes all indications covered by the reference medicines Prolia® (denosumab)* and Xgeva® (denosumab)* for treating a variety of conditions, including osteoporosis in postmenopausal women and in men at increased risk of fractures, treatment-induced bone loss, prevention of skeletal related complications in cancer that has spread to the bone, giant cell tumor of the bone, and treatment of hypercalcemia of malignancy refractory to bisphosphonate therapy." *Id.* And, as acknowledged by Sandoz, "[t]he BLA includes a comprehensive analytical and clinical data package, including data from the Phase I/III ROSALIA study," which purportedly demonstrate similarity to Amgen's denosumab products "in terms of pharmacokinetics, pharmacodynamics, efficacy, safety and immunogenicity in women with postmenopausal osteoporosis …." *Id.*

In connection with Sandoz's BLA application and the BPCIA procedures, Amgen identified a list of U.S. Patents for which Amgen believes a claim of patent infringement could be reasonably asserted against Sandoz's denosumab biosimilar. As noted above, this patent list was published on the FDA's Purple Book website and identifies, among other patents, U.S. Patent Nos. 9,320,816; 9,359,435; 11,130,980; and 11,299,760. These patents are directed at the novel processes used to manufacture biologic drugs like denosumab and correspond to European patents EP '861, EP '517, and EP '287, respectively. On May 1, 2023, Amgen filed a patent infringement lawsuit in the District Court for the District of New Jersey against Sandoz, Sandoz GmbH, and Lek, among others, alleging that Sandoz infringed certain of Amgen's patents under 35 U.S.C. § 271(e)(2)(C) based on the submission of Sandoz's BLA to the FDA, and that the commercial

manufacture, use, offer for sale, or sale of Sandoz's denosumab biosimilar during the term of the asserted patents-in-suit would infringe those patents.

In light of Sandoz's BLA submission to the FDA, statements that Sandoz will seek marketing authorization for its denosumab biosimilar in Europe, Sandoz GmbH's notice of intent to manufacture in Austria, and the identification of Slovenia in Sandoz's product packaging, Amgen believes that commercial scale manufacturing of Sandoz's denosumab in Austria and/or Slovenia is imminent, if not already underway.  Any such manufacturing threatens to irreparably harm Amgen.  Amgen is thus prepared to promptly initiate patent infringement proceedings in Austria and Slovenia, including preliminary injunction proceedings, to enjoin Sandoz GmbH and Lek from manufacturing (or continuing to manufacture) its denosumab biosimilar product in Europe.

### A.    Contemplated Austrian Proceedings

Amgen is prepared to file preliminary injunction and main proceedings in Austria upon receipt and analysis of additional evidence from Sandoz concerning the manufacture of Sandoz denosumab biosimilar product by Sandoz GmbH.  Göbel Declaration at ¶¶ 11-15.  Both proceedings would implicate one or more of the European Patents.  *Id.*  To prevail in the Austrian preliminary injunction proceeding, Amgen must show a "predominant likelihood" that Sandoz GmbH uses or threatens to use the patented processes and methods in Austria.  *Id.*  It is not sufficient that Sandoz GmbH has already provided notice of its intent to manufacture.  Austrian procedural rules require Amgen to present concrete evidence with its preliminary injunction filing that the processes and methods claimed in the European Patents are being used or will be used in Austria.  *Id.* at ¶ 13.   And all of that evidence must be submitted together with the initial submission requesting the preliminary injunction.  There is no procedural guarantee for the movant

to submit additional evidence, and the Austrian court may reject a preliminary injunction request if there is insufficient evidence accompanying movant's initial submission. *Id.* at ¶ 19.

The very limited pre-litigation discovery mechanisms under Austrian law also require evidence of infringement, and thus securing information to institute preliminary injunction proceedings must be done through other means. Because Section 1782 provides such means, it is an appropriate mechanism for Amgen to secure information that will support its preliminary injunction proceedings in Austria.

### B. Contemplated Slovenian Proceedings

Amgen is also prepared to initiate preliminary injunction and patent infringement proceedings in Slovenia should Amgen secure additional evidence sufficient to establish that Lek is producing Sandoz's denosumab biosimilar product in a manner that infringes at least Amgen's EP '517. Butolen Declaration at ¶¶ 14-29. Amgen may seek a preliminary injunction in Slovenia upon showing, among other things, that Amgen's patent rights have been infringed or there is a real danger that they will be infringed. *Id.* at ¶ 27. Slovenian courts strictly apply this requirement and will require that Amgen establish a real and concrete (and not merely hypothetical) danger of infringement. *Id.* Under Slovenian law, however, there are no pre-litigation discovery mechanisms to obtain evidence and thus, other means are needed to secure information that will assist in instituting preliminary injunction proceedings. *Id.* at ¶ 37. Again, because Section 1782 permits pre-litigation discovery, it is an appropriate means for Amgen to secure information that will aid in commencing its preliminary injunction proceedings in Slovenia.

### III.    SCOPE OF DISCOVERY REQUESTED

Amgen seeks the Court's assistance to obtain documents and testimony for use in the contemplated Austrian and Slovenian proceedings. The document and testimony requests are set forth in the draft subpoenas, which are filed herewith. Amgen will use the requested documents

and testimony to assist in developing its anticipated preliminary injunction and infringement pleadings in Austria and Slovenia (or elsewhere if appropriate). The document requests and testimony topics are narrowly tailored and targeted to confirm the location(s) where Sandoz manufactures or will manufacture its denosumab biosimilar and to obtain information about the manufacturing process and the attributes of Sandoz's denosumab biosimilar, much of which is the type of information that is typically provided to the FDA and/or the EMA. Because Sandoz (*i.e.*, Sandoz Inc.) is the applicant for FDA approval, Amgen believes that Sandoz has possession, custody, and control of the information and documents outlined above. Indeed, publicly available information from prior Sandoz BLAs confirms that the type of information sought by Amgen's Application is in Sandoz's possession, custody, and control. Exs. 9-13 (exemplary FDA and public documents that confirm manufacturing location and the processes used with respect to other Sandoz biosimilar products).

## IV.   LEGAL STANDARD

Section 1782 authorizes district courts to order documentary and testimonial discovery for use in foreign proceedings. *See* 28 U.S.C. § 1782(a) ("The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person."). Before a court can order Section 1782 discovery, a party must meet three statutory requirements: (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by an interested person. *Id.*; *see also In re Mota*, Misc. No. 19-369 (MN), 2020 WL 95493, at *1 (D. Del. Jan. 8, 2020).

If the statutory requirements are met, courts then consider the discretionary factors set forth by the Supreme Court in *Intel*:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," and thus "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
>
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States"; and
>
> (4) whether the request is "unduly intrusive or burdensome."

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004) (the "Intel Factors"). In evaluating the discretionary Intel Factors, which are not exhaustive, courts are mindful of the "twin aims" of Section 1782: providing efficient means of assistance to participants in international litigation in U.S. federal courts and encouraging foreign countries by example to provide similar assistance to U.S. courts. *Id.* at 252.

## V.    ARGUMENT

Amgen's Application satisfies the statutory requirements of Section 1782 because (1) Sandoz Inc. is incorporated in Delaware and thus resides within this judicial district; (2) the requested discovery will be used in preliminary injunction and patent infringement proceedings that are within reasonable contemplation; and (3) Amgen is an "interested person" by way of its status as a party to the contemplated Austrian and Slovenian litigation and its role in the U.S. BPCIA investigation involving Sandoz.

A.    **Amgen Satisfies Section 1782's Statutory Requirements, Authorizing the Court to Grant the Requested Discovery**

1.    **Sandoz Resides Within the District of Delaware**

For purposes of an application pursuant to Section 1782, the residency requirement is satisfied when an entity from whom discovery is sought is incorporated in the district.  *In re Application of Gilead Pharmasset LLC*, C.A. No. 14-mc-243 (GMS), 2015 WL 1903957, at *2 (D. Del. Apr. 14, 2015) ("[Respondent] is incorporated under the laws of Delaware, and is therefore within the jurisdictional reach of this court."); *Via Vadis Controlling GmbH v. Skype, Inc.*, C.A. No. 12-mc-193-RGA, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2023) ("Respondents concede that Skype is a Delaware corporation, and thus resides in the District of Delaware for the purposes of § 1782.").

Sandoz Inc. is incorporated in Delaware and therefore resides within the District of Delaware for purposes of this Section 1782 Application.  Egan Declaration at ¶ 19.

2.    **The Requested Discovery Is For Use in Preliminary Injunction or Patent Infringement Proceedings in Austria and Slovenia**

The "for use" requirement is satisfied by showing the discovery sought is intended for use in a foreign proceeding.  *See Intel*, 542 U.S. at 258.  There is no requirement that the foreign proceeding has begun or is ongoing; instead, the applicant must show that a foreign proceeding is within "reasonable contemplation."  *In re Intel Corp. Microprocessor Antitrust Litig.*, C.A. No. 05-717-JJF, 2008 WL 4861544, at *11 (D. Del. Nov. 7, 2008).  To show that a foreign proceeding is within reasonable contemplation, "an applicant must provide 'reliable indications of the likelihood that proceedings will be instituted within a reasonable time' for a proceeding to be within 'reasonable contemplation.'" *In re Matter of Wei*, C.A. No. 18-mc-117-RGA, 2018 WL 5268125, at *2 (D. Del. Oct. 23, 2018).  "[C]ourts have considered whether a theory of litigation

has been articulated, whether foreign counsel has been retained, and whether applicants have represented their intent to initiate further litigation upon obtaining additional information, among other factors." *In re Ex Parte Application of Iraq Telecom*, Misc. Action No. 19-175-RBS, 2023 WL 2402873, at *5 (E.D. Pa. Mar. 8, 2023). "When an applicant has not yet initiated a foreign proceeding, discovery is available if the materials may help the applicant either to plead or to prove an anticipated claim." *In re Alghanim*, 17-mc-406 (PKC), 2018 WL 235666, at *3 (S.D.N.Y. May 9, 2018).

Here, preliminary injunction proceedings are within reasonable contemplation in Austria and Slovenia. Sandoz GmbH has provided notice that it intends to begin commercial manufacturing shortly. Slovenia is identified in Sandoz's draft product packaging, and that manufacturing facility has acknowledged producing "active ingredients" for biosimilar medicines in connection with "the transfer and validation campaign of denosumab." Butolen Declaration at ¶ 11 (citing Lek 2020 Sustainability Report at 29). In addition, Amgen has identified patents in Austria and Slovenia that it believes will be infringed by Sandoz's commercial manufacturing of its denosumab biosimilar, and Amgen has retained counsel in Austria and Slovenia who are prepared to file the preliminary injunction proceedings. The evidence requested will be used to aid in sufficiently pleading the relief sought in these foreign jurisdictions. Göbel Declaration at ¶¶ 11-15; Butolen Declaration at ¶ 14-29.

Thus, the information sought by Amgen's subpoenas is "for use" in the contemplated Austrian and Slovenian proceedings.

### 3. Amgen Is an Interested Person Within the Meaning of the Statute.

The third statutory factor requires the Applicant to show it is an "interested party" in the contemplated foreign litigation. Amgen is the owner and assignee of the European Patents

and will be the lead plaintiff in both preliminary injunction proceedings and, as a party to the contemplated litigation, is an interested party. *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 91 (3d Cir. 2010) ("An interested person includes a party to the foreign litigation, whether directly or indirectly."). This is true notwithstanding the fact that the foreign litigations have not yet been instituted as Amgen "possesses a reasonable interest in obtaining judicial assistance," which is all that is required. *Intel*, 542 U.S. at 256. Amgen has an interest in protecting and enforcing its intellectual property, further highlighting that Amgen is an interested party for purposes of the instant Application.

**B.    The Court Should Exercise Its Discretion and Compel Discovery Because the *Intel* Factors Support Granting the Application**

**1.    Sandoz Inc. Is Not a Party to the Contemplated Preliminary Injunction Proceedings**

Sandoz Inc. is the target of the instant Application. Amgen does not anticipate that Sandoz Inc. will be a party to the Austrian or Slovenian litigations. Sandoz GmbH is the anticipated defendant in the Austrian proceedings and Lek is the anticipated defendant in the Slovenian proceedings because these are the parties that appear to own and operate the biosimilar manufacturing facilities in Austria and Slovenia, respectively. Göbel Declaration at ¶¶ 7, 11; Butolen Declaration at ¶¶ 8, 16-17. Courts have recognized that this factor favors compelling discovery because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence … may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264; *In re Liverpool Ltd. P'ship*, MISC. No. 21-86-CFC, 2021 WL 3793901, at *2 (D. Del. Aug. 26, 2021) (same). Indeed, the Göbel and Butolen Declarations highlight the difficulty of obtaining third-party discovery in Austrian and Slovenian proceedings, which further supports the need for the use of Section 1782 to obtain discovery from Sandoz Inc.

### 2. The Austrian and Slovenian Courts Will be Receptive to the Evidence Sought

The second *Intel* factor asks courts to consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or the agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "[T]he relevant inquiry is whether the foreign tribunal would consider the evidence produced pursuant to a § 1782 order." *In re Application of Gilead*, 2015 WL 1903957, at *3 (citing *In re Chevron Corp.*, 633 F.3d 153, 162-63 (3d Cir. 2011)). "The party opposing discovery bears the burden of persuading the court that the foreign tribunal would not consider the discovery sought by the § 1782 order." *Id.*

Here, there is no doubt that the Austrian court would be receptive to the evidence gathered pursuant to Section 1782. *See* Göbel Declaration at ¶¶ 20-22. In fact, Austrian courts have made direct use of Section 1782, having filed applications in the U.S. on behalf of the Austrian court. *In re Letter of Request from Dist. Ct. of Feldbach, Austria*, No. MC-22-00005-TUC-RM, 2022 WL 657398, at *2 (D. Ariz. Mar. 4, 2022) (granting a letter request from the District Court of Austria and noting "the [Austrian] tribunal is receptive to, and in fact is requesting, assistance from this Court."). District courts have likewise recognized that Austrian courts are receptive to evidence produced in response to Section 1782 applications filed by private litigants. *See In re B&C KB Holding GmbH*, No. 22-mc-00180 (LAK) (VF), 2023 WL 1777326, at *6 (S.D.N.Y. Feb. 6, 2023) (granting petition seeking documents to use in German and Austrian proceedings).

Similarly, the Slovenian courts would also be receptive to discovery obtained pursuant to Section 1782. Butolen Declaration at ¶¶ 41-48. In Slovenian courts, there is no

prohibition against using such discovery.  *Id.* at ¶ 42.  Instead, the Slovenian courts will only prohibit evidence where it is irrelevant, immaterial, or cumulative.  *Id.*

Thus, this factor also weighs in favor of granting Amgen's Application.

### 3. Amgen's Application Does Not Circumvent Foreign Restrictions on Evidence.

The third *Intel* factor, "whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies," also favors granting Amgen's Application. This factor requires courts to "consider whether the litigant's motives are tainted by a surreptitious effort to bypass foreign discovery rules."  *Kulzer*, 390 F. App'x at 92; *Intel*, 542 U.S. at 264-65. "[T]here is no requirement that a foreign litigant first attempt to obtain discovery through the foreign forum before resorting to Section 1782."  *In re O'Keeffe*, C.A. No. 47-5835 (WJM), 2015 WL 540238, at *6 (D.N.J. Feb. 10, 2015), *aff'd*, 646 F. App'x 263 (3d Cir. 2016).  Additionally, "there is no requirement that an applicant show that the information would be discoverable in the foreign proceeding or that it would be admissible."  *Id.* (citing *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 136 (3d Cir. 1985)).

In Austria, there is no procedure by which Amgen could obtain the necessary evidence before filing suit.  As noted by Mr. Göbel, the only possible proceeding in advance of a substantive patent-infringement proceeding is a preliminary injunction for the securing of evidence, but such an injunction is circular.  In order to obtain a preliminary injunction for the securing of evidence, Amgen must be able to "provide evidence indicating the infringement of a concrete patent claim."  Göbel Declaration at ¶ 13.  Thus, without discovery into Sandoz' production processes, which is the subject of the Section 1782 Application, such a request would most likely be denied.  *Id.* at ¶ 19.

Similarly, in Slovenia, Amgen does not have an avenue by which it could seek the discovery requested in the Section 1782 Application.  In Slovenia, the only pre-suit discovery mechanism is a request for securing evidence, which does not result in the *production* of evidence and requires a showing that Lek intends to, or is very likely to, destroy evidence.  Butolen Declaration at ¶ 34.  Other discovery mechanisms are available only after the preliminary injunction or infringement suit is filed.  Butolen Declaration at ¶ 35-39.  Because Amgen needs additional information concerning Sandoz's manufacturing activities before it can file suit in Slovenia, these Slovenian discovery procedures are unavailable at this stage.  Butolen Declaration at ¶ 40.

Seeking discovery via Section 1782 that cannot otherwise be obtained through the discovery mechanisms available in Austria and Slovenia does not "circumvent foreign restrictions on evidence"; insofar as courts in these countries "would readily accept relevant information discovered in the United States, application of a foreign discoverability rule would be senseless." *Intel*, 542 U.S. at 262 (further noting that "[t]he rule in that situation would serve only to thwart § 1782(a)'s objective to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws.").  Thus, Amgen's 1782 Application is not "a surreptitious effort to bypass foreign discovery rules" but rather seeks precisely the type of assistance that the statute was designed to afford by requesting relevant information that the Austrian and Slovenian courts may find useful that may otherwise not be obtainable under their own laws.  *Kulzer*, 390 F. App'x at 92.  Accordingly, the third *Intel* factor favors granting the Application.

### 4.    The Subpoena Is Not Unduly Intrusive or Burdensome

Finally, the fourth *Intel* Factor weighs in favor of granting Amgen's Application because the requested discovery is not "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.

Analysis of this factor corresponds with the standard used to evaluate discovery requests in domestic civil litigation under the Federal Rules of Civil Procedure. *See In re Global Energy Horizons Corp.*, 647 F. App'x 83, 86 (3d Cir. 2016) ("Thus, assessment of the fourth factor is virtually identical to the familiar 'overly burdensome' analysis that is integral to the Federal Rules.").

Here, Amgen seeks limited and narrowly tailored discovery from Sandoz regarding its plans to manufacture and produce its denosumab biosimilar in Austria and/or Slovenia.[11] For example, the document requests seek communications and agreements between Sandoz, Sandoz GmbH, and Lek related to the production of Sandoz's denosumab biosimilar (including material sources, suppliers, and the facilities that will participate in production). The requested discovery also seeks information regarding Sandoz's communications with regulatory bodies about its denosumab biosimilar, and documents detailing the manufacturing process. As noted previously, the U.S. and European Patents claim processes used to manufacture denosumab, and thus the requests target these processes to confirm that Sandoz's manufacture will infringe these patents. Mitigating any burden is the fact that Sandoz has already collected and produced to Amgen's separate outside counsel and an Amgen in-house representative a copy of its BLA, which is among the documents sought by these requests. Thus, Sandoz can readily reproduce that document, or agree that documents already supplied by Sandoz as part of the BPCIA exchange process may be disseminated more broadly and used for purposes of litigation in Europe.

---

[11]    To the extent any documents sought are confidential in nature Amgen is amenable to entering a protective order and will abide by D. Del. LR 26.2 until such an order is entered. Additionally, the Austrian and Slovenian Courts have procedures in place to maintain the confidentiality of any documents used in those proceedings. Göbel Declaration at ¶ 22; Butolen Declaration at ¶¶ 44-48.

Additionally, it is anticipated by Amgen that Sandoz has possession, custody, and/or control of the documents and information sought by the Application. Sandoz Inc. is the filer of the BLA in the United States seeking approval for its denosumab biosimilar product. As such, it would necessarily have information regarding the location, timing, and processes used to produce its biosimilar. For example, documents related to the manufacturing location(s) as well as process steps, and the validation of each step, would likely have been submitted to regulatory agencies in connection with Sandoz's BLA, as Sandoz has done in previous submissions to the FDA seeking approval to market other biosimilars. Exs. 9-13 (Exemplary FDA Documents). Moreover, Sandoz's proposed product packaging states that the denosumab biosimilar is a "Product of Slovenia" and is "Manufactured by: Sandoz Inc.," further underscoring Sandoz's possession, custody, and/or control over its European manufacturing operations.

Even if it does not physically have that information, which is unlikely, it is anticipated that Sandoz has a right of access to such materials, and even materials located abroad are subject to Section 1782 discovery. *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) (holding that Section 1782 reaches "responsive documents and information located outside the United States" so long as they are within the "possession, custody, or control of" the discovery target); *In re del Valle Ruiz*, 939 F.3d 520, 524 (2d Cir. 2019) (holding that "there is no per se bar to the extraterritorial application of § 1782"); *In re Liverpool*, 2021 WL 3793901, at *3 (granting § 1782 petition seeking documents held by the Japanese subsidiary from its Delaware parent). For example, in connection with Sandoz's FDA application to market its filgrastim biosimilar (EP2006), Sandoz had access to provide FDA a pre-license inspection of the manufacturing facilities in Kundl, Austria, as well as the manufacturing schedule for the drug substance. Ex. 11 at 198 (email from FDA to Sandoz Inc. regarding facility inspection).

Accordingly, the fourth *Intel* factor also weighs in favor of granting Amgen's Application.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Amgen respectfully requests that the Court grant Amgen's Application for an *ex parte* order pursuant to 28 U.S.C. § 1782.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Applicant Amgen Inc.*

May 9, 2023